**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**ORISKA INSURANCE COMPANY,**

                        **Plaintiff,**

   vs.                                                **6:17-cv-00910
                                                           (MAD/TWD)**

**ISRAEL DISCOUNT BANK OF NEW YORK and
CAPITAL ONE, N.A.,**

                        **Defendants,**

   vs.

**NAFTOLY WEBER, HERSHEL WEBER,** *a.k.a.
Harold Weber***, DINA SINGER, GUARANTEE
INSURANCE COMPANY, EVY WEBER,**

                    **Intervenor Defendants.**
_____

**ISRAEL DISCOUNT BANK OF NEW YORK,**

                  **Third-Party Plaintiff,**

   vs.

**UNITED STATES OF AMERICA,**

                  **Third-Party Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **KERNAN, KERNAN LAW FIRM**<br>185 Genesee Street, Suite 1401<br>Utica, New York 13501<br>Attorneys for Oriska Insurance Company | **LEIGHTON R. BURNS, ESQ.** |
| **KERNAN PROFESSIONAL GROUP, LLP**<br>1310 Utica Street<br>P.O. Box 750<br>Oriskany, New York 13424<br>Attorneys for Oriska Insurance Company | **JAMES KERNAN, ESQ.** |
| **GRABER LAW FIRM**<br>360 Lexington Avenue, Suite 1502 | **DANIEL GRABER, ESQ.** |

New York, New York 10017
Attorneys for Israel Discount Bank of New York

**TARTER KRINSKY & DROGIN LLP**         DEBRA E. BERNSTEIN, ESQ.
1350 Broadway
New York, New York 10018
Attorneys for Capital One, N.A.

**BARCLAY DAMON LLP**                   MITCHELL J. KATZ, ESQ.
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Attorneys for Capital One, N.A.

**AVROM R. VANN, P.C.**                 AVROM R. VANN, ESQ.
1211 Avenue of the Americas, 40th Floor
New York, New York 10036
Attorneys for Naftoly Weber, Hershel
Weber, Dina Singer, and Evy Weber

**WARNER & SCHEUERMAN**                 JONATHON D. WARNER, ESQ.
6 West 18th Street, 10th Floor
New York, New York 10011
Attorneys for Guarantee Insurance Company

**U.S. DEPARTMENT OF JUSTICE -**        STEPHANIE CHERNOFF, ESQ.
**TAX DIVISION**
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044
Attorneys for United States of America

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

In 2015, Oriska Insurance Company ("Oriska") commenced this lengthy dispute over the assets in six trust accounts that are subject to several creditors' claims. Defendants Capital One, N.A. ("Capital One") and Israel Discount Bank of New York ("IDB") are custodians of the accounts. *See* Dkt. No. 65-4 at ¶ 4. Hershel Weber, a.k.a. Harold Weber, is the grantor and

Naftoly Weber, Dina Singer, and Evy Weber (together with Hershel, the "Webers") are trustees to the accounts. *See* Dkt. No. 65-8 at § I(B); Dkt. No. 65-9 at § I(B). Guarantee Insurance Company ("Guarantee") and the International Revenue Service ("IRS") are creditors with liens on the accounts. *See* Dkt. No. 21-21; Dkt. No. 21-38 at 5-10.

Presently before the Court is Capital One's Motion for Summary Judgment against Plaintiff and the Webers, pursuant to Fed. R. Civ. P. 56, and Motion to Deposit Funds with the Court, pursuant to Fed. R. Civ. P. 67. *See* Dkt. Nos. 65, 66. For the reasons set forth below, the Motion for Summary Judgment is granted in part and denied in part. The Motion to Deposit Funds with the Court is denied.

## II. BACKGROUND

**A.    Facts**

This case involves six trust accounts that contain assets from the settlement of a case brought before this District in 2004.[1] *See* Dkt. No. 79-1 at ¶ 7. In 2010, Capital One became custodian of the accounts pursuant to two contracts (the "Account Control Agreements"). *See id.* at ¶ 9; Dkt. No. 65-8 (May 6, 2010 agreement with Hershel Weber and Oriska); Dkt. No. 65-9 (April 11, 2011 agreement with Naftoli Weber, Dina Singer, and Oriska).

The Account Control Agreements contain two indemnity clauses. The first clause provides that the Webers[2] "shall indemnify . . . [Capital One] . . . against all claims, liabilities and

---

[1] The original case involved a Lanham Act violation by one of Hershel Weber's companies. *See Oriska Insurance Company v. The Power P.E.O., Inc., et. al*, No. 5:03-CV-1481 (N.D.N.Y. filed Dec. 12, 2003).

[2] Hershel Weber was a party to the May 6, 2010 agreement; Naftoli Weber and Dina Singer were parties to the April 11, 2011 agreement. Evy Weber was not an original party to the agreement, but was appointed Successor Co-Trustee after Naftoly Weber resigned as Co-Trustee over the trusts. *See* Dkt. No. 58 at 1-2. Thus, Evy Weber has become a party to the April 11, 2011 Account Control Agreement.

3

expenses arising out of or relating to this Agreement, including losses, costs, damages, reasonable attorneys' fees and disbursements (collectively 'Liabilities') . . . , except to the extent such Liabilities are occasioned by gross negligence or willful misconduct on the part of [Capital One] . . . ." *See* Dkt. No. 65-1 at ¶ 4; Dkt. No. 65-8 at § I(1); Dkt. No. 65-9 at § I(1). The second clause provided that Plaintiff "shall indemnify . . . [Capital One] . . . for any Liabilities arising out of or relating to this Agreement by reason of any wrongful or unlawful act or failure to act on the part of [Oriska] . . . ." *See* Dkt. No. 65-1 at ¶ 5; Dkt. No. 65-8 at § I(2); Dkt. No. 65-9 at § I(2).

In August 2014, Capital One notified Oriska that it was resigning as custodian of the accounts, so Oriska made arrangements for IDB to take over their custody. *See* Dkt. No. 79-1 at ¶¶ 10-11. The parties executed agreements to facilitate this transfer on August 27, 2014. *See* Dkt. No. 80-1 at 7. Assets from three of the six accounts were successfully transferred to IDB. *See* Dkt. No. 79-1 at ¶ 13; Dkt. No. 80-1 at 6. However, the remaining assets could not be transferred because on July 1, 2015, Capital One was served with a Restraining Order regarding Hershel Weber's funds, on behalf of creditor Guarantee. Dkt. No. 79-1 at ¶ 14; Dkt. No. 21-21 at 29-31. Unable to complete the transfer, Capital One remains the custodian of three of the trust accounts. Dkt. No. 65-1 at ¶ 1.

**B.     Procedural History**

Plaintiff commenced this action on August 26, 2015 by filing a Complaint against IDB and Capital One in state court seeking to enjoin the banks from "delivering the assets in the Collateral Accounts to anyone other than the plaintiff . . . ." *See* Dkt. No. 65-4 at 8. A Temporary Restraining Order was granted on August 28, 2015 and modified on October 27, 2015 to allow the banks to collect their regular business fees from the accounts. *See* Dkt. No. 21-10 at 4. IDB and Capital One each filed Answers to the Complaint, and Guarantee intervened in the

action as a judgment-creditor. *See* Dkt. Nos. 21-9, 21-21, 21-24. On August 18, 2017, the action was removed to the Northern District of New York after the IRS levied a tax lien against Hershel Weber. *See* Dkt. No. 1; Dkt. No. 21-38 at 5-10.

On May 2, 2018, Capital One filed a Motion for Summary Judgment against Plaintiff and the Webers, pursuant to Fed. R. Civ. P. 56, and Motion to Deposit Funds with the Court, pursuant to Fed. R. Civ. P. 67. *See* Dkt. Nos. 65, 66. The Webers and Plaintiff each filed opposition papers on July 9, 2018. *See* Dkt. Nos. 79, 80. On July 13, 2018, Capital One filed its Reply. *See* Dkt. No. 82.

**C.     Local Civil Rule 7.1 Statement of Undisputed Material Facts**

In support of its Motion for Summary Judgment, Capital One submitted a Statement of Undisputed Material Facts, which broadly stated that (1) Capital One currently holds three of the trust accounts at issue in this case, (2) Capital One entered into Account Control Agreements with respect to these accounts, and (3) those agreements contain indemnity provisions as described above. *See* Dkt. No. 65-1 at ¶¶ 1-5. In response, the Webers submitted a Counter Statement of Undisputed Material Facts, in which they stated that (1) the Account Control Agreements were no longer valid, by "order" of the New York State Supreme Court, and (2) the Webers would be subject to over $800,000 of capital gains taxes if Capital One were to liquidate the securities in the Accounts. *See* Dkt. No. 80-5 at ¶¶ 1-2. The Webers did not admit or deny any of the facts in Capital One's Statement of Undisputed Material Facts.

Unlike the Webers, Plaintiff did not submit an Opposing Statement of Material Facts. However, in an Affidavit by Najam Adnan, an accounting analyst for the Oriska, Plaintiff provided: (1) details about the purpose and history of the funds, (2) that on August 4, 2014 Capital One notified Oriska that it was resigning as custodian of the funds, (3) that Oriska made

arrangements with IDB to take over custody of the assets, (4) that "Account Control Agreements continue the assets in custody from Capital One to IDB Bank," (5) that assets from three of the accounts remain with Capital One after the restraining order from Guarantee, and (6) that Oriska recently asked IDB to complete the transfer of the remaining assets from Capital One to IDB. *See* Dkt. No. 79-1 at ¶¶ 1, 4-15.

## III. DISCUSSION

**A.     Summary Judgment Motion**

### *1. Legal Standard*

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the

assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

### 2. *Local Rule 7.1(a)(3)*

Pursuant to Local Rule 7.1(a)(3), a party moving for summary judgment must submit a Statement of Material Facts, which "shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established." *See* N.D.N.Y. L.R. 7.1(a)(3). The record includes "the pleadings, depositions, answers to interrogatories, admissions and affidavits" and excludes "attorney's affidavits." *Id.* A party opposing a motion for summary judgment must file a response to the movant's Statement of Material Facts, and this "response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises." *Id*. The Local Rule further provides that "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.* (emphasis in original).

The Second Circuit has recognized "that district courts have the authority to institute local rules governing summary judgment submissions . . . and ha[s] affirmed summary judgment rulings that enforce such rules." *N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (internal and other citations omitted). "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing]

through voluminous records without guidance from the parties.'" *Id.* at 649 (quotation and other citations omitted).

Capital One's Statement of Undisputed Material Facts fully complies with Local Rule 7.1(a)(3), and the facts within are clearly supported by the record. Capital One has shown that it currently holds three of the trust accounts at issue in this case, that it entered into Account Control Agreements with respect to these accounts, and that those Agreements contain indemnity provisions as described above. *See* Dkt. Nos. 65-7, 65-8, 65-9. These facts are properly supported by an affidavit by a Vice President and Senior Trust Officer at Capital One, the May 6, 2010 Account Control Agreement, and the April 11, 2011 Account Control Agreement. *Id.*

On the other hand, neither Plaintiff nor the Webers properly adhered to Local Rule 7.1(a)(3). The Webers submitted a Counter Statement of Undisputed Material Facts that did not mirror Capital One's Statement with admissions or denials of each assertion, but instead contained only two additional facts to support their Opposition. *See* Dkt. No. 80-5; N.D.N.Y. L.R. 7.1(a)(3). Plaintiff did not even bother to submit a Statement of Material Facts, instead opposing Capital One's motion with an accounting analyst's affidavit and attorney's affirmation. *See* Dkt. Nos. 79, 79-1. As such, in accordance with Rule 7.1(a)(3), the Court deems the properly supported facts in Capital One's Statement of Material Facts admitted by all parties. *See* N.D.N.Y. L.R. 7.1(a)(3).

### 3. *Indemnification Clauses*

Even if the Court disregards these procedural deficiencies, the Court finds that the Webers' opposition papers have not actually raised any genuine issues of material facts. "Reliance on a party's statement of undisputed facts may not be warranted where those facts are unsupported by the record." *N.Y. Teamsters Conference Pension & Ret. Fund*, 426 F.3d at 649

(citing *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73-74 (2d Cir. 2001)). Here, the record does not support the Webers' assertions about the indemnification clauses.

First, the Webers claim that Justice Samuel Hester of the New York State Supreme Court "expressly ruled that the Account Control Agreements no longer remain in effect." *See* Dkt. No. 80-5 at ¶ 1; *see also* Dkt. No. 80-4 at 4-5. This is plainly false. The Webers point to a December 18, 2015 Order denying a motion for change of venue based on a venue selection clause in the Account Control Agreements, in which Justice Hester stated, "[t]he parties interested in the accounts have executed the agreements of August 27, 2014, thereby superceding and vitiating the previous agreements involving Capital One. The actual transfer of the accounts from Capital One to IDB is merely a ministerial act. For these reasons, neither the 'control agreements' involving Capital One, nor any provisions therein, remain in effect."[3] *See* Dkt. No. 80-1 at 6. The record clearly indicates that Capital One was not able to transfer all of the assets to IDB, so Capital One maintained custody over three of the trust accounts subject to the Account Control Agreements. *See* Dkt. No. 65-1 at ¶ 1; Dkt. No. 66-6 at ¶ 5; Dkt. No. 79-1 at ¶ 14; Dkt. No. 21-21 at 29-31. Justice Hester's statement was not an order to the contrary. Thus, the record does not support the Webers' claim that the Account Control Agreements no longer remain in effect as to the accounts still with Capital One.

Second, both Plaintiff and the Webers argue that there are questions of material fact as to whether Capital One is entitled to indemnification. For the reasons set forth below, the Court finds that Capital One is entitled to indemnification from the Webers, but there are questions of material fact as to whether Capital One is entitled to indemnification from Plaintiff.

---

[3] Rather than citing to the Order directly, the Webers impermissibly cite to their attorney's affirmation to support this statement. *See* Dkt. No. 80-5 at ¶ 1; N.D.N.Y. L.R. 7.1(a)(3) (excluding attorney's affidavits from permissible record citations).

9

It is well-established in New York that "parties may obtain contractual indemnity from liability - even where such liability is incurred in whole or in part through their own fault - through express, 'unequivocal' agreements to that effect." *Gibbs-Alfano v. Burton*, 281 F.3d 12, 20 (2d Cir. 2002) (*citing Margolin v. New York Life Ins. Co.*, 32 N.Y.2d 149, 153 (1973)). Still, "[p]romises by one party to indemnify the other for attorneys' fees run against the grain of the accepted policy that parties are responsible for their own attorneys' fees." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003) (citing *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492 (1989)). Thus, under New York law, "[w]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." *Hooper*, 74 N.Y.2d at 491 (citations omitted). That is, "[t]he promise should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." *Id.* at 491-92 (citations omitted).

Courts in the Second Circuit have employed the following principles of construction to determine whether indemnification provisions are intended to include attorneys' fees in suits between the parties to the contract: (1) the analysis begins with the presumption that the agreement does not cover attorneys' fees in an action between the parties; (2) a provision containing only broad language that does not unequivocally indicate that the parties intended to indemnify attorneys' fees will not support such a claim; (3) if it is apparent that no third-party claims were contemplated by the parties, the agreement should be construed to provide indemnity for claims between the parties; (4) likewise, if future third-party claims were possible at the time of the contract, there should be no indemnification for suits between the parties; and (5) indemnification provisions that specifically distinguish third-party claims from interparty claims

10

indicate an intent to cover claims between the parties." *In re Refco Securities Litig.*, 890 F. Supp. 2d 332, 343-44 (S.D.N.Y. 2012) (citations omitted).

### a. The Webers' Liability

The Webers argue that Capital One is not entitled to indemnification because it has engaged in willful misconduct by "actively litigating and not, as a mere stakeholder, remaining neutral and awaiting the outcome of this lawsuit. . . ." *See* Dkt. No. 80-4 at 5, 8-10. In their opinion, Capital One's decision to "actively participat[e] in every aspect of the case and itself mak[e] motions . . ." was a calculated attempt to generate extensive litigation fees. *See id.* at 6. Instead, the Webers argue, Capital One should have simply answered the Complaint to advise the Court that it would continue to hold the accounts and would abide by a court order. *See id.* at 8-9.

That argument is absurd. Capital One has every right to protect its interests in this lawsuit, and its decision to defend itself is not willful misconduct. *See Chesapeake Energy Corp. v. Bank of New York Mellon Tr. Co.*, No. 13-CV-1582, 2013 WL 5432331, *5-7 (S.D.N.Y. Sept. 30, 2013) (finding that although a bank's decision to defend against claims on the merits was not required, doing so was not the equivalent of acting "'in bad faith, vexatiously, wantonly, or for oppressive reasons'") (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)); *see also Gardner v. Owasco River Ry.*, 142 A.D.2d 61, 64 (3d Dep't 1988) (holding that, to prove willful or malicious conduct, the plaintiff is required to show "an intentional act of unreasonable character performed in disregard of a known or obvious risk so great as to make it highly probable that harm would result").

The language and purpose of the Account Control Agreements, a strict reading of the indemnity clause, and the analysis of the surrounding facts and circumstances clearly indicate that the parties intended that the Webers would indemnify Capital One "against all claims, liabilities

11

and expenses" arising out of the Account Control Agreements. *See Hooper*, 74 N.Y.2d at 491. The parties executed the Account Control Agreements when Capital One became custodian of the trust accounts; it is logical that they would indemnify the custodian for costs associated with managing those accounts. *See* Dkt. No. at 65-1 at ¶¶ 1-2; Dkt. No. 65-8; Dkt. No. 65-9. Nothing in the record suggests otherwise.

Furthermore, the Court finds that Capital One is entitled to reasonable attorneys' fees for actions between the parties because the indemnity clause unequivocally includes "reasonable attorneys' fees and disbursements." *See* Dkt. No. 65-8 at §§ I(1)-(2); Dkt. No. 65-9 at §§ I(1)-(2); *In re Refco Securities Litig.*, 890 F. Supp. 2d at 343-44. The Webers urge the Court not to find liability at this point, vaguely alleging that Capital One will seek unreasonably high fees. *See* Dkt. No. 80-4 at 11-12. The Court is only deciding the issue of liability today, and will rule on the reasonableness of the fees after it has reviewed submissions on that issue. Therefore, Capital One's Motion for Summary Judgment against the Webers is granted.

### b. *Oriska's Liability*

The indemnification clause that applies to Plaintiff contains notably different language. That clause provides that Capital One is entitled to indemnification only if Plaintiff engaged in "any wrongful or unlawful act or failure to act." *See* Dkt. No. 65-1 at ¶ 5; Dkt. No. 65-8 at § I(2); Dkt. No. 65-9 at § I(2). Capital One argues that "Oriska's failure to prosecute this litigation in a timely and straightforward manner has contributed to the expense incurred by Capital One," suggesting that Plaintiff's delayed prosecution tactics satisfy the failure to act requirement in the indemnification clause. *See* Dkt. No. 65-2 at 7. Plaintiff responds that this statement is conclusory, and that Capital One fails to provide "the factual background which establishes any basis for damages or expenses caused by Oriska's actions." *See* Dkt. No. 79 at ¶ 13.

Examining the record, the Court does not find that Plaintiff failed to diligently prosecute this litigation, or that Plaintiff has engaged in any conduct covered by the indemnification clause. Since the case was removed to this Court in August 2017, Plaintiff has participated in telephonic conferences, submitted motions and pleadings, and complied with the Court's deadlines. *See* Dkt. Nos. 32, 33, 46. Although Plaintiff did seek a thirty day extension to respond to document requests, that brief extension does not suggest Plaintiff has not diligently prosecuted this action. *See* Dkt. Nos. 67, 68. Without evidence of any wrongful or unlawful act, or failure to act on Plaintiff's part, the Court cannot say that a genuine issue of material facts does not exist. As such, Capital One's Motion for Summary Judgment against Oriska is denied.

**B.     Rule 67 Transfer of Funds**

Capital One has moved to deposit the funds in the accounts with the Court, pursuant to Fed. R. Civ. P. 67. For the following reasons, that motion is denied.

A court may grant leave to deposit funds into the court "where there are competing claims to the funds that may subject the party holding the funds to liability." *Harvey v. Fresquez*, No. 10-CV-5291, 2011 WL 855875, *3 (S.D.N.Y. Mar. 8, 2011), *aff'd*, 479 Fed. Appx. 360 (2d Cir. 2012) (internal citations omitted). Rule 67 is a "'procedural device . . . intended to provide a place of safekeeping for disputed funds pending resolution of a legal dispute and not to provide a means of altering the contractual relationships and legal duties of each party.'" *Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 729 (S.D.N.Y. 2014) (quoting *Prudential Ins. Co. of Am. v. BMC Indus., Inc.*, 630 F. Supp. 1298, 1300 (S.D.N.Y. 1986)). It is within the court's discretion to permit or deny such a deposit. *United States v. New York State Supreme Court, Erie Cnty.*, No. 07-CV-27S, 2008 WL 305011, *3 (W.D.N.Y. Feb. 1, 2008).

Capital One asks the Court to enforce at least one portion of the Account Control Agreements, the indemnification clauses, while simultaneously attempting abrogate its custodial obligations under those same contracts. To allow Capital One to deposit the funds would alter the parties' "contractual relationships and legal duties," because Capital One has a contractual obligation to act as custodian to the trust accounts. *See Ray Legal Consulting Grp.*, 37 F. Supp. 3d at 729 (denying request to deposit funds where the parties had contracted that the law firm would act as the escrow agent for the funds). The Court is not a vehicle for contract modification. As such, the Motion to Deposit Funds with the Court is denied.

**C.     Venue**

The Webers argue that venue is improper in the Northern District of New York, relying on the Account Control Agreements' venue selection clauses which provide that "any dispute arising out of or related to the Agreement shall be litigated solely in the Supreme Court of New York, County of New York, or the United States District Court for the Southern District of New York." *See* Dkt. No. 80-4 at 5. The Webers have not moved for a transfer of venue since their motion for change of venue was denied in state court in 2015, though they have been litigating in this forum since August 18, 2017. *See* Dkt. No. 1; Dkt. No. 80-1 at 8. At this point, the forum selection clause has been waived. As such, the Webers' request for change of venue is denied.

**D.     Breach of Contract**

Finally, the Webers mistakenly argue that Capital One's claim for indemnification is a "garden variety breach of contract claim." *See* Dkt. No. 80-4 at 12-14. This is completely inaccurate. Capital One seeks to *enforce* the indemnity clauses in the Account Control Agreements; it is not alleging a breach of those agreements.

**IV. CONCLUSION**

After careful review of the record, the parties' submissions, and the applicable law, the Court hereby,

**ORDERS** that Capital One's Motion for Summary Judgment is **GRANTED** as to Hershel Weber, Naftoli Weber, Dina Singer, and Evy Weber and **DENIED** as to Oriska Insurance Company; and the Court hereby

**ORDERS** that Capital One's Motion to Deposit Funds with the Court is **DENIED**; and the Court hereby

**ORDERS** that Hershel Weber, Naftoli Weber, Dina Singer, and Evy Weber's request for change of venue is **DENIED**; and the Court hereby

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 22, 2018
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge